COOK *v.* VOLUNTEER STATE LIFE INSURANCE CO.

No. 10353. FEBRUARY 13, 1935.

*H. C. Halcher* and *G. C. Anderson,* for plaintiff in error.
*Fullbright & Burney,* contra.

RUSSELL, Chief Justice. The Volunteer State Life Insurance Company filed a petition praying that a policy of life insurance issued on the life of J. Murray Cook be canceled. The defendant, the beneficiary named in the policy, in her answer prayed for a judgment against the plaintiff for the amount of the policy. The first trial resulted in a verdict in favor of the cross-action of the defendant. On motion of the plaintiff a new trial was granted, which resulted in a directed verdict in favor of the prayers of the plaintiff for a decree canceling the policy. The defendant excepted to the refusal of a new trial.

The petition alleged that the policy lapsed on August 11, 1932,

for non-payment of premiums due thereon, and that upon false and fraudulent representations by the insured as to his physical condition the policy was reinstated. The answer of the defendant denied that the policy had ever lapsed, or that the statements made by the insured in his application for reinstatement were fraudulent as charged.

Upon the trial it appeared that the policy in question was issued on July 26, 1925, and was carried as a term policy until January 1, 1926, from which time its status was that of a twenty-pay life policy. The annual premiums due on January 1 were paid during the years 1926 to 1930, inclusive. The policy contained the usual provision in life-insurance policies that a grace period of thirty days was allowed in payment of premiums. During January, 1931, the insured borrowed $214 on the policy, and out of the proceeds of this loan paid the premium due then. When the January, 1932, premium became payable the insured, Dr. Cook, wrote to the Augusta office of the company, stating he would like to give a note for the premium due. He was advised that "The full loan value has been withdrawn on this policy; however we can make you an extension on the following proposal: Premium on policy is $73.40, the loan interest is $12.24, making a total of $86.24. If you will remit us promptly $15.24 together with the executed extension note, we will carry the policy to May 1st, 1932; and we will at that time, if you are unable to settle the note in full, grant a further extension of a part of it." Dr. Cook executed the note and remitted the $15.24. When this note matured in May, the company agreed to accept a payment thereon of $15 and to extend the due date of the note to August 1, 1932, which was done. The note provided a grace period of ten days. The insured mailed to the Augusta office of the company a check for $56.30, payable to the order of the company, which was received on August 16, 1932, and on that day deposited to the credit of the company in a bank in Augusta, by Mrs. Harden, the company's cashier at Augusta. The indorsement on the check was "For deposit to credit of The Volunteer State Life Insurance Company of Chattanooga, Tennessee." On August 20, 1932, Mrs. Harden wrote to the insured: "I have been holding your payment of $56.30 on extension note in suspense column, waiting for the balance of $1.77 interest due. Will appreciate it you will give the matter prompt attention, so we can close

our books on same and forward the entry to the home office." On August 22, 1932, the secretary-treasurer of the company wrote to Dr. Cook the following letter: "We wish to call your attention to the fact that your note given in connection with an extension of time for payment of premium under the above policy . . and interest, amounting to $58.35, has been due and unpaid since August 1, 1932. The policy lapsed on that date, since the reserve value was not sufficient to continue it under the automatic option. We urge that you apply for reinstatement at once; and if application is made now, the enclosed personal health certificate may be used, your signature to which can be witnessed by any disinterested party. This form, properly executed, together with remittance in the amount of $58.35, should be returned immediately, so that if your application for reinstatement is approved your protection would be restored with the least possible delay . ." The insured filled out and signed the reinstatement blank and sent it, with the $1.77 interest, to the cashier at Augusta, who forwarded the application for reinstatement to the home office of the company. The company notified the insured, by letter of September 15, 1932, that his policy had been reinstated. In October following, the insured went to a hospital and was found to be afflicted with gallstones, and was operated on therefor in November. After the operation the insurance company, having learned thereof, mailed the insured a letter stating that the reinstatement of his policy had been withdrawn, due to the misrepresentations made by him in his application for reinstatement, and enclosing a check payable to the insured and his wife for the amount of the payment made by him on the due date in August, with interest thereon. The check was retained, but never cashed. The insured died on January 2, 1933.

1. The insurance company brought the petition, after the death of the insured, to cancel the insurance contract on the ground that the policy had lapsed, and in order to prevent collection by the beneficiary, who had asked for a blank upon which to make proofs of loss. The insured had paid the note representing the premium on the policy to a date subsequent to his death. In payment of a note given by the insured for the premium just referred to, the insured transmitted to a duly authorized agent of the insurer a check which was paid by the bank upon which it was drawn, and the money was deposited to the credit of the insurance company

in a depository selected by the insurer, and the note was forwarded to the insured. In the circumstances of this case this was a payment of the premium, and the policy did not lapse.

2. A jury would have been authorized to find in favor of the beneficiary, and consequently it was error to direct a verdict in favor of the petitioner. An insurer can not arbitrarily accept money, and afterwards say he holds it for a different purpose than payment of the premium.

3. Moreover, if for no other reason, the court erred in directing the verdict, inasmuch as the suit was not one justiciable in equity. Enelow *v.* N. Y. Life Ins. Co., U. S. (55 Sup. Ct. 310, 79 L. ed. 247).

4. In view of the rulings stated above, a ruling on the question of the reinstatement of the policy is not at this time necessary. The court erred in overruling the motion for a new trial.

*Judgment reversed. All the Justices concur.*